IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 17, 2002 Session

## DENNIS J. HUGHES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 96-C-1802     Walter Kurtz, Judge**

_____

**No. M2001-02454-CCA-R3-PC - Filed March 13, 2003**

_____

Dennis J. Hughes appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief. He claims on appeal that the lower court erred in (1) denying his claim that his constitutional rights were abridged by the state's failure to disclose evidence against him prior to trial as part of the bill of particulars, and (2) ruling that he could not impeach the prosecutor from the conviction proceedings with the prosecutor's own alleged prior bad acts. Because we are unpersuaded of reversible error, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, J.J., joined.

Charles R. Ray, Nashville, Tennessee, for the Appellant, Dennis J. Hughes

Paul G. Summers, Attorney General & Reporter; Kim R. Helper, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

In 1997, the petitioner, formerly a member of the Davidson County Bar, was convicted at a jury trial of bribery of a witness and conspiracy to bribe a witness. *See State v. Dennis J. Hughes*, No. M1997-00084-CCA-R3-CD (Tenn. Crim. App., Nashville, Dec. 28, 1999), *perm. app. denied* (Tenn. 2000). Following an unsuccessful course of litigation in the appellate courts, the petitioner filed the present petition for post-conviction relief. Primarily, he complained in the petition of prosecutorial tactics in the course of the conviction proceedings. An evidentiary hearing was conducted. Through counsel, the petitioner framed his issues at the hearing as relating to (1) the state's alleged violation of the trial court's order regarding the bill of particulars, (2) the state's alleged sponsorship of perjured testimony via witness Rhonda Williamson, and (3) the state's violation of *Brady v. Maryland* in failing to provide during discovery a letter from the co-defendant's

attorney to the district attorney's office which stated that the co-defendant would not implicate Hughes in her testimony. Following receipt of the proof, the parties were allowed to submit written memoranda, and the post-conviction court then entered a detailed, written order in which it found no basis for granting the petitioner's requested relief. On appeal, the petitioner has pursued only the first of his three hearing issues but also complains that the lower court, at the evidentiary hearing, improperly limited his examination of Assistant District Attorney General John Zimmerman regarding discovery and disclosure shortcomings in other criminal cases.

The facts pertinent to this post-conviction action are these. The defendant and a co-defendant were convicted of bribery of a witness and conspiracy to commit bribery. *See Dennis J. Hughes*, slip op. at 2. These convictions related to a scheme in which the defendant and his co-defendant were ultimately found guilty of bribing a state's witness who they anticipated would give damaging testimony against an individual charged with murder. *See id.*, slip op. at 3. The charged individual was the defendant's client and the co-defendant's boyfriend. *See id.* The scheme also allegedly involved an alleged attempt to solicit the murder of the witness who had been the target of the bribery scheme, although the charge of solicitation to commit first degree murder was dismissed when the trial court granted the defendants' motion for judgment of acquittal on this count. *See id.*, slip op. at 2, 8-9. During the course of pretrial litigation in the conviction proceedings, the trial court granted Hughes's motion for a bill of particulars. The state responded by filing a bill of particulars which represented that the bribery and conspiracy charges were factually based upon an offer of money on a specified date. The state disclosed that the offenses were more specifically described in three surreptitiously taped conversations in which Hughes, his co-defendant, and Rhonda Williamson, who was the alleged target of the bribe, are the various participants.[1] The bill of particulars alleged that recordings of the three conversations had already been provided to the defense in the course of discovery. Significantly, the bill of particulars did not allege that there was an additional, unrecorded telephone conversation in which Williamson spoke with Hughes's co-defendant about the particulars of the bribe and overheard Hughes making incriminating statements in the background.[2] Likewise, at a hearing on a motion *in limine* at the beginning of the defendant's trial which dealt with admissibility of a co-conspirator's hearsay testimony, the state did not tip its hand that it intended to offer such evidence. Evidence to this effect, however, was offered at the defendant's trial during the testimony of Rhonda Williamson as part of the state's case-in-chief. The

[1]Williamson and the co-defendant are heard talking on all three tapes. Hughes is heard on only the first.

[2]As the petitioner frames the issue in his brief, the conversation in question involved a telephone call between Williamson and the co-defendant in which Williamson overheard Hughes in the background making inculpatory statements about providing money to Williamson. Williamson's testimony at the petitioner's trial was imprecise on the point of whether she actually spoke to Hughes on the telephone or merely heard him talking in the background during the call. It is not clear whether the witness's testimony was irreconcilable or whether her testimony should be construed to mean that Hughes was in the background initially while she was talking to the co-defendant, but that he later picked up the telephone and spoke with her. The most damaging version of events to which she testified came when she claimed that she spoke with Hughes and he said "[t]hat they were going to bring me the money." At the post-conviction hearing, she testified that Hughes got on the phone and identified himself and said that he and the co-defendant were coming to see her. For purposes of this post-conviction appeal, it is not necessary for us to resolve any factual discrepancy.

defense did not object to introduction of the evidence or make any claim of unfair surprise or constitutional violation either during trial, in the motion for new trial, or on direct appeal.

In his post-conviction petition, however, Hughes complains that his constitutional rights under Amendments 5, 6 and 14 of the United States Constitution and Article 1, sections 8 and 9 of the Tennessee Constitution were abridged by the state's failure to disclose this evidence prior to trial.

At the post-conviction hearing, the petitioner testified that he was surprised at trial when the assistant district attorney general mentioned in his opening statement a phone conversation between Ms. Williamson and the co-defendant in which Williamson overheard the defendant making statements in the background about bringing money to Williamson. Likewise, he was surprised when Ms. Williamson testified consistently with the prosecutor's opening statement, and he characterized the testimony as untruthful. The petitioner claimed that the defense was "hamstrung" in trying to refute Ms. Williamson's testimony without advance notice. In explaining why he and his attorneys did not discuss cross-examination of Ms. Williamson about the date and time of this conversation, he testified that his reactions to the evidence were devastation and astonishment and that he was relying on "two very good lawyers" to handle the case appropriately.[3] He acknowledged that he did not bring to counsel's attention that the state was offering evidence that had not been produced in pre-trial discovery or pursuant to the bill of particulars. After his conviction, it later occurred to the incarcerated petitioner to have his brother retrieve his calendar from storage and forward it to his post-conviction counsel. The petitioner introduced a copy of his calendar for the date of the unrecorded telephone call, which showed several court appearances scheduled for the morning and an afternoon appointment. He testified that he specifically remembered the date in question and that he was in various courts all morning; he did not, however, remember whether he kept the afternoon appointment. He also introduced court documents showing his appearance in court on the date in question.

One of the petitioner's trial attorneys was called as a witness and testified that he did not recall the evidence coming up until the trial was underway. Counsel claimed that had he known about this evidence at an earlier stage, he could have marshaled other evidence to rebut it. He characterized the proof at trial relative to the date and time of the conversation to be vague, and he admitted that his client, the petitioner, did not mention the possibility of challenging the evidence with his calendar for the pertinent time period. Counsel admitted that it did not occur to him at the time that this type of evidence might be employed to contradict the state's proof.

Three assistant district attorneys general testified, as did an investigator from the Metro Police Department. Although their recollections were vague due to the passage of time, their testimony generally indicated that the state did, in all likelihood, have knowledge well before the petitioner's trial of Ms. Williamson's claims relative to the unrecorded telephone conversation. Their testimony did nothing to refute the petitioner's claim that this evidence was not provided prior

---

[3]The petitioner did not pursue a claim of ineffective assistance of trial counsel.

to trial. However, John Zimmerman, the lead prosecutor during the conviction proceedings, took the position that the state had adequately complied with the trial judge's order granting the bill of particulars.

The petitioner's examination of General Zimmerman, who was called by the petitioner as an adverse witness, was protracted and contentious. At one point, the petitioner attempted to examine General Zimmerman about an alleged pattern or practice in other cases of failing to disclose information to the defense, failing to comply with court orders, pursuing trial strategies that were belied by the evidence of the case, and providing defense counsel with misleading information relative to the state's evidence, all to demonstrate that any shortcoming in turning over evidence to the defense in the petitioner's conviction proceedings was not an innocent mistake or accident. The post-conviction court, however, ruled that this line of inquiry was not permissible under the petitioner's theory of admissibility, which was Tennessee Rule of Evidence 404(b). The court disallowed an offer of proof via examination of the witness, but it did allow counsel to recite at some length the factual allegations into which he would have inquired had the court ruled otherwise. Some of these factual allegations were based upon matters reported in the opinions of state and federal courts.

At the conclusion of the hearing, the petitioner characterized the state's failure to disclose evidence via the bill of particulars as so egregious that it went beyond mere violation of Tennessee Rule of Criminal Procedure 7, relative to disclosure in a bill of particulars, and amounted to violation of the defendant's constitutional rights to due process, a fair trial, and fundamental fairness.

The court allowed the parties to submit written memoranda, and the court thereafter issued a detailed, written order denying relief. In pertinent part, the court's order found that although the bill of particulars had not specifically disclosed the evidence of the telephone conversation in question, it had "put the defendant on more particularized notice as to the allegations." Moreover, the indictment itself identified the pertinent date of the offenses. The court found that in view of the information provided, it was "doubtful" that the state violated the court's order relative to the bill of particulars, and even if it had, the petitioner was not entitled to relief for a variety of reasons. First, the petitioner failed to demonstrate a constitutional violation. Second, the issue had not been raised in the conviction proceedings and was therefore waived. Finally, the petitioner had failed to demonstrate prejudice.

Following the adverse ruling in the lower court, the petitioner filed the appeal that is now before us for disposition.

**I**

We consider first whether the post-conviction court improperly limited the petitioner's evidence at the post-conviction hearing by curtailing his examination of Assistant

District Attorney General John Zimmerman relative to General Zimmerman's alleged prior bad acts.

The petitioner claims that General Zimmerman's conduct in other cases demonstrates a pattern or practice of failing to disclose information to the defense, failing to comply with court orders, pursuing trial strategies that were belied by the evidence of the case, and providing defense counsel with misleading information relative to the state's evidence, all of which tend to prove that any shortcoming in turning over evidence to the defense in the petitioner's conviction proceedings was not an innocent mistake or accident. The petitioner theorizes that under Tennessee Rule of Evidence 404(b), evidence of a common scheme or plan by the witness is relevant to rebut the witness's claim that there was a benign explanation for any wrongdoing on his part in the instant case.

Rule 404(b) is generally used in criminal prosecutions as a means for admitting evidence of the defendant's otherwise inadmissible crimes, wrongs, or acts. *See, e.g., State v. Robinson*, 73 S.W.3d 136, 152 (Tenn. Crim. App. 2001), *perm. app. denied* (Tenn. 2002); *State v. Brewer*, 932 S.W.2d 1, 24-25 (Tenn. Crim. App. 1996).

It is not necessary for us to engage in a laborious inquiry into the applicability of Rule 404(b) in post-conviction actions, however. Disposition of the issue before us is possible on a more basic level. Only that evidence which is relevant is admissible. Tenn. R. Evid. 402. For the reasons that follow, the petitioner's proffered evidence is not relevant in that it does not "hav[e] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Tenn. R. Evid. 401 (definition of relevant evidence).

The petitioner argues in his brief that his proffered bad character evidence about General Zimmerman "was germane to the issue of whether [General Zimmerman's] denials of remembering when he became aware of Ms. Williamson's testimony and that he was the victim of an innocent mistake in not turning it [the evidence relative to the unrecorded telephone call] over to the defense were an ongoing pattern or practice, or a scheme to evade his responsibilities."

The problem with this theory of admissibility is that neither the time that General Zimmerman became aware of Ms. Williamson's prospective testimony nor the question whether Zimmerman made an innocent mistake in not turning over the evidence are the subject of inquiry in this case. Rather, the inquiry focuses on whether the state was required to disclose this evidence, and if so, whether the non-disclosure was so damaging to the defendant that his constitutional rights were violated. As we discuss in Section II below, we have determined that the state was not required to disclose the evidence, and therefore, there was no constitutional shortcoming. Thus, the proffered evidence was irrelevant to the issue before the court, and its exclusion was not error.

Furthermore, General Zimmerman did not testify that he innocently or accidentally overlooked disclosing the evidence in question in responding to the court's order that a bill of particulars be provided. His testimony was that he thought he had complied with the letter and spirit

of the court's order in making the disclosures which were given in the bill of particulars. Thus, there was no claim of mistake or accident to be rebutted, so the proffered bad act evidence is irrelevant for this reason, as well.

## II

The remaining issue is whether the post-conviction court erred in declining to find constitutional shortcomings in the petitioner's trial based upon the state's pretrial failure to disclose evidence of the unrecorded, inculpatory telephone call. In his brief, the petitioner vigorously argues that the state's nondisclosure of the evidence went so far beyond the realm of a simple violation of Tennessee Rule of Criminal Procedure 7(c) that it constituted a violation of his constitutional fair trial, confrontation, and due process rights.

We will first consider whether there was a violation of Rule 7(c). If that question can be answered in the negative, then there is no need for this court to inquire further into the alleged constitutional violations that are the subject of this post-conviction proceeding. However, if Rule 7(c) was violated, then we must consider whether the violation was so egregious that it amounted to a constitutional deprivation which prejudiced the petitioner at trial.

Tennessee Rule of Criminal Procedure 7(c) provides, "Upon motion of the defendant the court may direct the filing of a bill of particulars so as to adequately identify the offense charged." The Advisory Commission Comments further define the parameters of the rule as allowing the bill of particulars "where needed by the defendant in order that the defendant can know precisely what he or she is charged with." Tenn. R. Crim. P. 7, Advisory Comm'n Comments. Moreover, the Comments admonish, "This provision is to be construed to serve that singular purpose, *and is not meant to be used for purposes of broad discovery.*" *Id.* (emphasis added).[4]

In this case, the trial judge granted the defendant's motion for a bill of particulars. In so doing, the trial judge made the following comments relative to the scope of his order.

> I think the State should provide a bill of particulars. There's really no way that the judge can set out the parameters of that except in sort of general terms. But I think the State should just tell him in plain description what it is specifically the State alleges that he did.

---

[4]Tennessee Rule of Criminal Procedure 16(a) governs a criminal defendant's discovery of information from the state, but it has no application to the unrecorded telephone call in which Ms. Williamson claims to have talked with or overheard the petitioner. The rule provides for discovery of state-held statements made by the defendant but only when the statements are written or recorded or, if oral, were made to an interrogating law enforcement officer. Tenn. R. Crim. P. 16(a)(1)(A). Moreover, the rule explicitly does not authorize the discovery of statements made by state witnesses or prospective state witnesses. Tenn. R. Crim. P. 16(a)(2). At oral argument, the petitioner conceded that Rule 16(a) was not implicated by the facts of his case.

If the State knows particularization of time and place of the alleged offense – *now I'm not talking about a four or five page response. Probably – perhaps even a paragraph is going to do it.* And I know you two [attorneys] have been around a long time and seen bills of particular. I don't think I need to be anymore [sic] specific than that, I hope.

(Emphasis added.)[5]

The indictment identified the offenses as first, involving an offer, conference, or agreement to confer money to Rhonda Williamson with the intent to corruptly influence her testimony in an official proceeding. The second count charged a conspiracy between Hughes and his co-defendant to bribe a witness. The second count particularly described the following overt act:

A meeting was arranged by Suvonnya Lakeisha Smith [the co-defendant] between Dennis J. Hughes and Rhonda Williamson on January 25, 1995, in Nashville, Tennessee. The purpose of the meeting was for Rhonda Williamson to recant her previous truthful testimony against Wayford Demonbreun in exchange for money.

The bill of particulars filed by the state informed the defendant of the following.

## COUNT 1

The state alleges that the defendants offered, or agreed to offer or conferred, a sum of money on the date set forth in the indictment. The substance of the offers are [sic] more specifically described throughout the conversations between the defendants and Rhonda Williamson as transcribed in the draft transcripts labeled tapes number 1, 2, and 3, heretofore submitted to defendants' counsel as part of the State's response to defendants' request for discovery. These conversations occurred through telephone communication to Rhonda Williamson at her residence at 2331 Oak Court, Nashville, Tennessee. The meeting described in draft transcript of Tape #1 occurred near the residence of Rhonda Williamson at 2331 Oak Court, Nashville, Tennessee, and within a late model Lexus automobile operated by defendant Dennis Hughes.

## COUNT 2

The State has alleged that the defendants' [sic] acted pursuant to an agreement to bribe Rhonda Williamson and that evidence of such agreement or concert of mind is based upon the conversations between the defendants' [sic] and Rhonda

---

[5]The motion for bill of particulars is exhaustive in its request for particularized details of the offenses. In the post-conviction proceedings, the petitioner has characterized the motion as having been "granted . . . in its entirety without limitation." However, we believe that the parameters of the court's order granting a bill of particulars is defined by the limits described above.

Williamson as transcribed in the draft transcripts labeled Tapes # 1, 2, and 3, heretofore submitted to defendants' counsel as part of the State's response to defendants' request for discovery. Additionally, the State would rely upon the Bill of Particulars set forth as to Count 1, and further rely upon the events set forth in the transcript of evidence of proceedings heretofore submitted in the State's response to request for discovery by defendants' counsel.

The function of a bill of particulars is to provide the defendant with the details of the charge he faces, to avoid his prejudicial surprise at trial, and to allow him to preserve any claim of double jeopardy. *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991); *State v. Hicks*, 666 S.W.2d 54, 56 (Tenn. 1984). The bill of particulars is *not* properly utilized for the purposes of broad discovery; rather, it is sufficient if it provides the defendant with the information necessary to prepare a defense and avoid prejudicial surprise. *See State v. Stephenson*, 878 S.W.2d 530, 539 (Tenn. 1994). Specifically, the bill of particulars is not a device which requires the state to reveal its evidence or theories, except to the extent that those things are revealed via disclosure of the necessary information to fulfill the purposes of the bill of particulars. *Id.*

After carefully considering the issue, we are unconvinced, for the reasons that follow, that the state violated Rule 7(c) by failing to disclose the evidence in question in its bill of particulars. First of all, the state's answer, viewed in the letter and spirit of the trial judge's ruling in granting the bill of particulars, was adequate. Likewise, the information disclosed is consistent with the parameters of the governing law relative to specific information which must be disclosed. The state was not required to provide a laundry list of each and every minute detail of the defendant's involvement in the charged offenses. *See Stephenson*, 878 S.W.2d at 539. It was required to provide reasonable specificity to allow the defendant to know the crimes with which he was charged. *Byrd*, 820 S.W.2d at 741. Its response did so. The response informed the defendant that he was charged with bribery of a witness occurring on January 25, 1995, based upon an agreed exchange of cash for Rhonda Williamson's recantation of her previous testimony implicating Wayford Demonbreun. It likewise informed him that he was charged with conspiracy of that offense based upon his agreement to carry out the offense with his co-defendant. The indictment and bill of particulars further informed the defendant of factual specifics by referring to three taped conversations which were provided during discovery and by alleging that the co-defendant arranged a meeting for Hughes and Williamson, at which Williamson was to make a tape recording in which she recanted her previous testimony against Demonbreun.

The bill of particulars provides much in the way of particular information relative to the charges against the defendant, and the indictment provides the date of the offense. The bill of particulars does make reference to telephone communication, although it focuses on the taped conversations as providing more specific information relative to the nature of the bribery scheme.

Furthermore, in assessing whether a Rule 7(c) violation existed, we are unconvinced the nondisclosure in this case caused prejudicial surprise to the defendant. In order to fully assess the impact that the state's nondisclosure may have had on the dynamics of the conviction

proceedings, this court has reviewed the appellate record from the petitioner's direct appeal. Upon doing so, this court is struck by several things that have not been highlighted in the post-conviction proceedings but nevertheless have a significant impact on our resolution of the issue.

It appears from the petitioner's trial record that Ms. Williamson had already testified in a prior proceeding that the co-defendant told her in a telephone conversation that Hughes wanted Williamson to recant her previous testimony and provide him with a taped statement in which she would say that she did not actually witness the homicide of which Hughes's client was accused. Williamson further testified in this prior proceeding that Hughes was to be actively involved in this scheme in meeting Williamson at a restaurant to make the tape and then taking the tape to court on behalf of his client.[6] On one of the tapes referenced in the bill of particulars, the co-defendant says that she has spent the last two days in Hughes's office making sure that she understands what he wants her to have Williamson say in her recantation. With information available to the defense that the state intended to show this level of culpability on the part of the defendant, we are hard-pressed to see how additional information that the defendant also participated in the telephone conversation is critical to the defense and its nondisclosure prejudicial, particularly where the defendant was already aware of the existence and basic substance of the telephone call, albeit not the allegation of his own involvement in it.

In contravention of the petitioner's claim of paralyzing surprise at trial, the direct appeal record reflects that following that state's mention in its opening statement of the defendant's involvement in the unrecorded telephone call, the defense directly responded in its own opening statement by forecasting that the evidence would show that despite any testimony Ms. Williamson might give relative to Hughes's participation in an unrecorded telephone call, Ms. Williamson had already given sworn testimony in another proceeding that only the co-defendant was involved in the telephone call. Second, the defense cross-examined Ms. Williamson in some detail about her prior testimony relative to the unrecorded telephone call. The petitioner's defense team used the prior testimony, in which Williamson apparently said that she spoke only with the co-defendant and not Hughes, to impeach her contrary trial testimony that the call involved both Hughes and the co-defendant. Our discovery of these facts in the direct appeal record go a great distance in undermining the defendant's claim of prejudicial surprise at trial. The defense was able to respond aggressively to the state's evidence even though it had not had advance notice of the specific factual allegation.

At the post-conviction hearing, the petitioner made much of the potential exculpatory character of his calendar entries for the date of the offense. He claimed that these entries belied Ms. Williamson's claim that he spoke with her by telephone on that date. However, the indictment put the petitioner on notice of the date on which the state contended that the offenses took place, and even absent specific information that the state intended to offer proof of an inculpatory event during

---

[6]The record of this prior proceeding is not before this court. These facts are gleaned from assertions made by defense counsel during opening statements at the petitioner's trial.

a time when the petitioner had activity noted on the calendar,[7] the potential relevance of his calendar should have been apparent prior to trial. Furthermore, the petitioner did not testify at his trial, and he did not claim in his post-conviction testimony that he would have done so in order for his calendar to be admitted and so that he could offer evidence that he was in court for clients the entire morning that the state alleged the telephone call took place. Although he theorizes that he might have been able to seek admission of court records showing his appearance in court on the date in question, records for only one such case were offered for this purpose at the post-conviction hearing, and they do not reflect the actual time the petitioner spent in court relative to his client's case.

For all of these reasons, we are not convinced that the state violated Rule 7(c) in its pretrial disclosures in the bill of particulars. Under the petitioner's theory, the Rule 7 violation that he contends occurred was so egregious that it amounted to constitutional shortcoming. However, if there was no Rule 7 violation, it follows that there was no constitutional shortcoming. In the absence of constitutional error, this court may not grant post-conviction relief. *See* Tenn. Code Ann. § 40-30-203 (1997). Thus, the petitioner is not entitled to relief.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[7]Actually, the petitioner's calendar does not *per se* conflict with Williamson's testimony. Although the timing is imprecise, it appears that Williamson received the telephone call in question during the morning hours. Hughes has multiple names entered on his calendar for 9:00 a.m. He testified at the post-conviction hearing that these names represented clients of his, and he was in various courts for them all morning. It is his testimony, rather than the calendar, which directly contradicts Williamson's trial testimony.